SHARON LEE ELLISON, by her next friend, LELA NARDICCHIO, Appellant, v. EARL PLATTS et al., Appellees.

No. 44839.

JUNE 20, 1939.

REHEARING DENIED SEPTEMBER 22, 1939.

Bateson & Ryan, for appellant.

Lundy, Butler & Lundy, for appellees.

HAMILTON, J.—This case involves the question of the custody of a twenty-month-old child, the contest being between the young mother and the mother's aunt and uncle with whom the child has resided and been cared for since her birth out of wedlock. Cases of this character tear at the heart strings of all normal human beings and are recognized as perhaps the most difficult and baffling to the courts of all the matters with which they have to deal. Because of the inherent sentimentality of the human heart, courts, necessarily composed of men endowed with ordinary attributes, have found it imperative to brace and steel themselves against these almost overpowering influences, where a mother's love for her baby is involved, and, at every stage of the proceeding, keep an eye single to the best interests of the child, always realizing, of course, that at best it is only problematical, being entirely in futuro. It is a known fact, incapable of disputation, that not infrequently from most unpromising environments and surroundings have emerged men and women of great worth and accomplishments, leaders in church and state far outrivaling many of their more favored compeers brought up in so-called best homes and environments. To have been born poor, to have known what it is to want, to have been forced, from sheer necessity, to struggle and fight for existence, to have learned frugality and industry in the

"school of hard knocks" and to have had, with all, the love of mother—these have, perhaps, been the most potent elements comprising the fulcrum in the lives of countless numbers of successful men and women composing the backbone of this great country; hence, to determine in each particular case what is for the best interests of a little child is a most trying and dubious question.

The defendants alleged in their answer to the petition, in substance, three defenses: (1) That Lela, the mother of Sharon Lee Ellison, on or about the first day of December, 1936, orally agreed to surrender the custody and possession of said child unto the defendants and that they accepted such surrender, custody and care of such child and relying thereon have continuously cared for said child; (2) that the mother, on or about the month of May, 1937, willfully and wrongfully abandoned said child at the farm of the defendants and refused to look after said child, removing herself to Waterloo, Iowa, and, although she was repeatedly invited to return and make her home with them, she refused to do so and abandoned said child to the care, custody and control of the defendants, which abandonment continued to the commencement of this action; (3) that said Lela and her husband have not established a permanent and proper home for the development of a child of such tender years and that the progress, both social and mental, of such child will be greatly impaired should the court remove its custody unto the said Lela and her husband and especially alleging that said home of the said Lela and her husband is inadequate and improper in that the habits of Lela and Joe are immoral in that they are addicted to the use of intoxicating liquors and indulging in the frequent use of profane language. All of said defenses are specifically denied in a reply filed in said case.

There was a trial to the court and, after hearing the evidence, the trial court entered judgment against the petitioner in which judgment the learned trial court made the following pronouncement:

"This proceeding is brought by habeas corpus to recover the custody of the child, Sharon Lee Ellison, a child born unto the said Lela Ellison (now Nardicchio) out of wedlock, which child was taken by the consent of the said Lela, practically at once after its birth to the home of the Defendants in this case,

where the said child has remained at all times since, and was the home in which the said Lela lived for some considerable time and until because of a trivial matter she left that home and the child and went to Waterloo, Iowa, where she lived for several months and finally in the spring of 1938 become intermarried with one Joe Nardicchio and is now known as Lela Nardicchio.

"In this trial the Defendants have been present in Court with their son and their daughter constituting their family, and the Plaintiff, Lela Ellison Nardicchio, has been present in Court and has testified; and her husband, Joe Nardicchio, has been present in Court during the four days of hearing, but he has not testified; the Court, however, has observed him and his conduct in the courtroom as well as the testimony and conduct of the said Lela Ellison Nardicchio, and the conduct of the Defendants and of the witnesses for all parties and is thoroughly satisfied that the best interests of the child demand that it be left with the Defendants and that the said Lela Nardicchio and her husband be not permitted to have the care, custody and control of the said child. The mother, Lela Nardicchio, was upon the witness stand twice during the trial and from the evidence and from her conduct and demeanor the Court is satisfied that she is not capable of giving the said child a proper care, or comfort or home and that the child will be very much better off in the home of the Defendants than to be with its mother.

"The Court is most reluctant whenever a mother asks for her child to give the child to any person other than the mother; but in this case the child was taken away practically at once after its birth and has been cared for and supported by the Defendants ever since and the Court is satisfied that the mother has never become really attached to the child; while on the other hand it is evident that the affection of the child for the Defendants Platts and the affection of the Platts' family for the child is a marked affection.

"It must not be overlooked that the child is of the blood of the Defendants herein and that they have seen fit to incur the expense of the four days trial with their witnesses and attorneys to protect this child and that if left with these Defendants it will be near the grandmother who also resides very near the Platts home.

"On the whole the Court finds that any other disposition

of the child than to award it to the Defendants herein would be a gross injustice to the child.''

In matters of this kind, the well settled rule in this state is that the paramount consideration is the best interests of the child. This is so fundamental that no citation of authorities is necessary, but see McDonald v. Stitt, 118 Iowa 199, 91 N. W. 1031; Hadley v. Forrest, 112 Iowa 125, 83 N. W. 822; and Knochemus v. King, 193 Iowa 1282, 1285, 188 N. W. 957. Many other cases might be cited to the same effect.

"Moreover, it is a case where so much depends upon the appearance and demeanor of the parties and the witnesses, so much upon the discretion of the trial court, and so much upon the welfare of the child as disclosed by his appearance and affections, that we are not justified ordinarily in disturbing the finding of the trial court.'' Smidt v. Benenga, 140 Iowa 399, 403, 118 N. W. 439, 441.

For many years, in this state, actions of this character were treated as strictly law actions with the finding of the trial court having the same force and effect as the verdict of a jury. Bonnett v. Bonnett, 61 Iowa 199, 201, 16 N. W. 91, 47 Am. Rep. 810. In fact, this rule was announced and adhered to in Knochemus v. King, supra, decided by this court as recently as the year 1922. However, in the more recent cases, this court has treated habeas corpus matters involving the custody of minor children in the nature of an equity proceeding. See Barry v. Reeves, 203 Iowa 1345, 214 N. W. 519; Barnett v. Blakley, 202 Iowa 1, 5, 209 N. W. 412; and Jensen v. Sorenson, 211 Iowa 354, 367, 233 N. W. 717.

It would serve no useful purpose to attempt an analysis of the long record of the testimony. As is usual in these family matters, "mountains have been made out of molehills" and trivial matters magnified beyond reason and, for the sake of all concerned, the least said about such matters and the sooner they are forgotten by the litigants and the immediate family the better for all concerned. We have carefully read the entire record and given consideration to every proposition presented, and conclude that when we apply the principle of law that the best interest of the child is paramount and above all other questions, under this record we would not be justified in disturbing the

decree of the able and experienced trial court who heard and saw the witnesses.

The case is accordingly affirmed.—Affirmed.

MITCHELL, C. J., and HALE, MILLER, SAGER, OLIVER, STIGER, and BLISS, JJ., concur.