KATHRYN LOIS LURSEN, by HELEN JURRENS, her mother and next friend, Appellant, v. GRACE HENRICHS, Appellee.

No. 47252.

(Reported in 33 N. W. 2d 383)

AUGUST 2, 1948.

Corcoran & Kennedy, of Sibley, for appellant.

. Kindig, Kindig & Beebe, of Sioux City, and Fischer & De Waay, of Rock Rapids, for appellee. .

MANTZ, J.—This is a proceeding in habeas corpus brought by Helen. Jurrens for and on behalf of her minor daughter, Kathryn Lois Lursen, to obtain the care and custody of such minor daughter from the minor's maternal grandmother, Grace Henrichs. The court awarded the custody of the minor child to its mother during the summer months and to the grandmother during the school years, with the right of visitation of both mother and grandmother when the minor was in the custody of the other. The mother has appealed.

While the proceedings were brought on behalf of the minor, Kathryn Lois Lursen, we will refer to her mother as plaintiff or appellant. The grandmother, Grace·Henrichs, will be designated as defendant or appellee.

I.   Appellant in her brief states that the sole issue presented is the right to custody of the child and that the sole question presented on appeal is whether the trial court was in error in denying the mother full and absolute custody of the child.

In open court it was stipulated that Helen Jurrens is the duly appointed, qualified and acting guardian of the person and property of Kathryn Lois Lursen, having been duly appointed by the district court of Lyon County, Iowa.·

. II.   We will briefly summarize some of the facts appearing in the record. Most of them are without dispute. Kathryn Lois Lursen, hereinafter referred to as Kathryn, was born September 18, 1937. Her father died June 16, 1937. Her parents had lived upon a farm near Sibley, Iowa. In January 1938 the appellant, taking Kathryn with her, went to the home of appellee in Little Rock, Iowa. Kathryn stayed in that home

thereafter. In January 1941 appellant married Anton Jurrens and went with him to a farm in the vicinity and at present they reside on a farm close to George, Iowa, a town in the same county as Little Rock. To appellant and Anton Jurrens a daughter was born, which child was five years old when the case was tried.

When Anton and appellant were married they moved to Anton's farm, leaving Kathryn with the appellee. When the mother married and left appellee's home to live with her husband there was no express agreement or definite arrangement for Kathryn's custody. The mother came to visit Kathryn frequently, and usually during the summer Kathryn went to the farm where Anton and her mother lived, and remained there for varying periods all the way from several days to weeks. Appellant would come in and get her and take her back to the home of appellee. Sometimes members of appellee's family would take her out and bring her back. Kathryn regularly attended the town school of Little Rock. She was a good student, liked to attend and got good grades. Her relations with other children and those with whom she came in contact were always pleasant. Many witnesses testified that she was happy and contented in the home of appellee. Her mother and stepfather contributed to her support by both cash, clothes and supplies to appellee's household. The estimate of the cash contributions approximates from $250 to $300 from the time appellant left the home of appellee until the time of the trial. Up until sometime in 1946 or 1947 the relations between appellant and her mother had been cordial and friendly. About that time some trouble arose between them. Appellant requested the custody of Kathryn. She made the request several times and these requests were not complied with; some words followed and finally appellant was not allowed to see Kathryn and was ordered off the premises. Thereafter this action was brought.

Appellee is a widow, age about sixty-three years, and lives in a house in Little Rock which belongs to an unmarried adult son, George. She has an unmarried adult daughter, Grace, who lives in the house of appellee. Appellee had received about $4000 from her husband's estate and no other property. The daughter, Grace, supports herself by doing domestic work,

while George works at various jobs. At the time of the trial he was operating a baler. Appellee's home is large and there is ample room for the four members of the family. Appellee and the other adult members of the family bear good reputations. The members are well provided for. Kathryn attends Sunday school regularly.

The appellant lives in a good home. The members thereof are appellant, her five-year-old daughter, Glenda Jean, and her husband. She displays real affection for Kathryn and wants to have her with her. Her husband is a good farmer—has an eighty-acre farm all paid for and a full and complete line of farm machinery and considerable livestock. He has an auto and a pick-up truck. There can be no question as to his financial ability or willingness to properly support Kathryn as a member of his home. He expresses real affection for her and wants her to come into the home and is willing to adopt her. He has a large home of eight rooms, five of which are bedrooms, and it is equipped with modern conveniences such as electric lights, a deep freeze, and a bathroom.

Both appellant and her husband bear good reputations and the husband is rated as a good farmer. They attend church approximately twice a month. The husband drinks beer and occasionally hard liquor but never to excess.

The trial court in its findings stated that both homes were good, the surroundings in each were pleasant and agreeable and that the atmosphere of each was wholesome and that either would be a proper place for Kathryn.

The record shows that at the time of the trial the minor, Kathryn, was about ten years old. Her half sister, Glenda Jean, was five years of age and attended a country school which was situated just across the road from the home of her mother. On the various occasions when Kathryn visited at the home of her mother, she and Glenda got along pleasantly. At all times Kathryn got along fine while she was at the farm home of her mother.

Some difficulties seem to have arisen between Kathryn's mother and appellee during the year of 1946 and continued until the present action was brought. The trial court in the

findings of fact stated that no satisfactory reason appeared for the barrier which arose between the mother and the grandmother but was of the opinion that it arose because of the demand of Kathryn's mother that she be given the custody of her child.

The record shows that Kathryn, as a witness, expressed a desire to remain with appellee. There is other evidence which confirms this statement. Ordinarily, such is entitled to some consideration but as the child was less than ten years old when the statement was made little importance can be attached to such. The record shows that there was genuine affection between Kathryn and appellee; that Kathryn went with her frequently and seemed to prefer her company. It can readily be inferred from the record that Kathryn's feeling in the matter towards appellee grew out of their associations and the fact that the appellee indulged her to a very considerable degree. She had money which was given to her and she spent it as she liked. She stated that she had not been out to the appellant's home since 1945; she said she "used to like" her mother but now "I don't like Helen [her mother]. She always comes to make Oma [grandmother] sick. I know Helen wants to take me home with her. I don't want to go home with her."

III. The controversy is over the custody of a minor child. The action was in habeas corpus, tried in equity and on appeal is triable here de novo. Ellison v. Platts, 226 Iowa 1211, 286 N. W. 413; Barry v. Reeves, 203 Iowa 1345, 214 N. W. 519; Jensen v. Sorenson, 211 Iowa 354, 233 N. W. 717; Lancey v. Shelley, 232 Iowa 178, 2 N. W. 2d 781; Paulson v. Windelow, 236 Iowa 1011, 20 N. W. 2d 470. The holding in the earlier cases was to the contrary but in the above-cited cases this court has treated habeas corpus matters involving the custody of minor children in the nature of equity proceedings. For earlier cases holding to the contrary see Knochemus v. King, 193 Iowa 1282, 188 N. W. 957.

IV. The matter of the controlling consideration where the custody of minor children has been the issue has been before this court many times. This court has held that in the case of conflicting claims on that matter the parent is entitled to the prior right under the statute. See sections 668.1 and

668.2, Code of 1946. Also, that there exists a presumption in the case of the surviving parent.

In Winter v. Winter, 184 Iowa 85, 87, 166 N. W. 274, this court had before it the question of the right of a parent to the custody of a minor child. Therein, this court, speaking through EVANS, J., said: "In such a contest, the father, as the only surviving parent, starts with a very strong presumption in his favor." See, also, Paulson v. Windelow, supra; McFarland v. Taylor, 214 Iowa 417, 239 N. W. 702; Allender v. Selders, 227 Iowa 1324, 1331, 291 N. W. 176, 180. Various other cases from this court make a like pronouncement. In the last case cited, we said:

"This right of a surviving parent is an absolute one, unless it has been relinquished by abandonment, contract, or otherwise, or unless the best interest and welfare of the child call for other care and custody."

In the case of Adair v. Clure, 218 Iowa 482, 485, 255 N. W. 658, 660, in speaking of the right of a parent to the child, this court (KINTZINGER, J.) used the following language:

"The legal right of the parents, however, should never be lost sight of as an influential factor, and the court should always give the custody to them, unless they so conduct themselves or the conditions are such, as to render it essential to the safety and welfare of the child in some serious and important respect, either physically, intellectually, or morally, that it should be removed from their custody."

In the recent case of Paulson v. Windelow, supra, SMITH, J., reviews a number of our cases bearing on that subject. There reference is made to our recent case of Wooley v. Schoop, 234 Iowa 657, 12 N. W. 2d 597, where a ten-year-old minor was taken from the home of relatives of his deceased mother and given to his father. In the Paulson case it was stated that in the last analysis the welfare of the child was the ultimate consideration; that fundamentally it is a question of fact, or of opinion and judgment based upon the facts shown.

A reading of the cases leads to the conclusion that the

presumption in favor of the surviving parent is subject to the facts bearing on the welfare and best interests of the minor.

V. This court has stated that in cases involving the custody of a minor, the desire of the minor was to be considered. In considering such matter, however, various factors are not to be lost sight of—the age of the minor; the length of time the minor has lived in the home for which preference is stated; the nature of the associations therein; the contacts with the one seeking a change of custody; the relationships and past associations; the natural and legal rights of the contending parties; and any other matters throwing light thereon. Such matter was touched upon in the following cases: Knochemus v. King, supra; Barry v. Reeves, supra; Hullinger v. Hullinger, 133 Iowa 269, 110 N. W. 470; Horn v. Horn, 221 Iowa 190, 265 N. W. 148; Brem v. Swander, 153 Iowa 669, 132 N. W. 829; Wooley v. Schoop, supra. In Wooley v. Schoop the child was a boy eleven years old and expressed a preference to remain with the stepfather. Speaking of this desire this court (MULRONEY, J.) said at page 668 of 234 Iowa, page 602 of 12 N. W. 2d: "When we speak of what is best for the child we do not mean that which the child wants."

The record further shows that prior to the trial of the cause, Helen Jurrens was appointed by the district court of Lyon County, Iowa, guardian of the person and property of Kathryn and that she qualified and was so acting at that time. Section 668.1, Code of 1946, provides that the parents "are the natural guardians * * * of their minor children", and the following section that "the surviving parent becomes such guardian." This court has held that the right of the surviving parent to the custody of a minor under sections 668.1 and 668.2 is absolute unless the right has been relinquished by abandonment or otherwise, or unless the best interests and welfare of the child require other care and custody. Wooley v. Schoop, supra; Lancey v. Shelley, supra.

VI. A careful study of the record and of the findings and decree of the court reveals the difficulties which confronted that official when he came to the finding and decision. The court stated that the law in cases of this kind was simple. Then follows with a statement that the paramount consideration was the

best interests of the child. The court states that the case is unusual in that the contest is between a mother and a daughter over a child of the latter and in the direct line of descent.

The court follows with the statement: "Much can be said in favor of each of the claimants for the child's custody." Then follows a statement of the advantages on behalf of each claimant. Four of such are set forth on behalf of appellee and five on behalf of the child's mother, appellant. We will attempt to summarize. For appellee: (a) She has assumed primary responsibility for the support and care of the child for the past ten years (b) the school situation in the town of Little Rock—to remove her to a rural school would require a readjustment in that respect (c) satisfactory and happy family relations now exist; some uncertainty as to the child's adjustment to a change at her present age (d) the apparent preference of the child to remain where she is.

Factors in favor of appellant: (a) The right of the surviving parent considered in line with the best interests of the child (b) in age and health advantage the likelihood of greater stability for the child's future; the expectancy of the mother as contrasted with that of the appellee (grandmother) and the reasonable likelihood that due to the age of the latter she might become incapacitated before the child reaches maturity (c) the advantage of companionship and counsel of the younger woman as the child approaches the age where more guidance is necessary (d) a more nearly normal relationship, including the relationship of a sister, and the probability of acquiring a father as well as a mother (e) greater financial resources and correspondingly a greater ability to afford the child better advantages.

The court then expresses some doubt as to the likelihood of divided custody working out in a satisfactory manner. We feel that such a doubt may be properly justified. The trial court, not without misgivings, was of the opinion that a trial be given of such divided custody and awarded the custody to the mother with the right of the appellee (grandmother) to have the child during the school year. As a matter of fact the finding of the trial court seemed largely based upon the school situation, and further that to place the child in the home of its mother

and in another school would no doubt lead to a permanent estrangement between the appellant and the appellee. The court ordered that while the child was going to school the mother could visit her one week-end each month, and that while with the mother the appellee could visit her in a like manner. While in school the grandmother was to have charge of the discipline and conduct of Kathryn and the mother a like right outside the school year. The finding further provided that in the case of the incapacity of the grandmother to carry on, the child would have the other home to go to. The court expressly stated that in case the contesting parties desired to enter into some other arrangements, it would be agreeable to the court.

The court realizing the difficulties of the situation and the uncertainties of the future said: "It is my hope that this arrangement will work out."

While entertaining some doubts as to whether the court could in this proceeding reserve jurisdiction, still it proceeds to consider anything as to further orders that might be necessary for the best protection of Kathryn and reserved jurisdiction for that purpose.

The costs were taxed to appellant. No question seems to be raised by appellant on this matter. The principal contention is that she had an absolute right under the statute and the facts to the sole custody of her minor child and that the only valid order the court could make was to award her such custody.

The court carefully reviewed the record and set forth in the findings its conclusions thereon. We have gone over the record and agree with the findings of the court.

While the proceedings are in equity and the case on appeal is triable de novo, we are inclined to agree with the able trial court confronted with a somewhat unusual and perplexing situation fraught with difficulties and uncertainties and we, too, indulge in the pious hope that the arrangement as to the custody of the child will work out. The case is affirmed.—Affirmed.

SMITH, C. J., and OLIVER, BLISS, HALE, GARFIELD, WEN-NERSTRUM, and HAYS, JJ., concur.

MULRONEY, J., dissents.