ANTHONY WAYNE BALL, a minor, by his next friend, ELMORE B. BALL, appellee, v. NANCY LEE BALL et al., appellants.

No. 49630.

(Reported in 96 N.W.2d 317)

764

MAY 5, 1959.

Don H. Jackson, of Council Bluffs, for appellants.

Ross, Johnson, Northrop, Stuart & Tinley, of Council Bluffs, for appellee.

OLIVER, J.—Robert O. Ball and defendant Nancy Lee Ball were married October 28, 1955. Their marital domicile was Atchison, Atchison County, Kansas, which was and is the home of Robert's parents, Elmer B. Ball and wife. Plaintiff Anthony Wayne Ball, born April 19, 1956, is the only child of Robert and Nancy.

In October 1957 Nancy instituted suit for divorce against Robert in the district court of Atchison County, Kansas. The record in that case shows several hearings, at one of which, February 8, 1958, the court made an order, which was approved by Nancy's attorneys, that the temporary custody and control of Anthony be given Mr. and Mrs. Elmer Ball. The trial of the divorce suit, at which Nancy was represented by her attorneys, but was not present in person, resulted in judgment, March 7, 1958, that she had been guilty of gross neglect of duty toward her husband, Robert, and that it was for the best interests of the child that its guardianship, care, custody and control be with Mr. and Mrs. Elmer B. Ball. Robert was granted a divorce on his cross-petition, and the custody of the child, Anthony, was awarded to Mr. and Mrs. Elmer Ball.

Late in December 1957, before the trial of the divorce suit, defendants Ralph Brody and wife drove to Atchison and took Nancy and Anthony to the home in Council Bluffs rented by the Brodys, where they have since lived. Upon the rendition of the Kansas judgment of March 7, 1958, which awarded Mr. and Mrs. Elmer Ball the custody of Anthony, Mr. and Mrs. Ball went to Council Bluffs with copies of the judgment and asked for Anthony's custody. This was refused. On April 16, 1958, this habeas corpus proceeding was instituted in Pottawattamie District Court, and the writ issued.

Upon trial it was adjudged that it was for the best interests and welfare of the child, Anthony, that Mr. and Mrs. Elmer B. Ball, rather than the defendants, have his care, custody and control and that the writ of habeas corpus be sustained and the child be delivered into the care, custody and control of Mr. and Mrs. Elmer B. Ball. Defendants appealed and this court granted them a stay pending determination of the appeal.

I. Where the custody of children is involved we have adopted the rule that the scope of the writ of habeas corpus is enlarged and invokes the broad equitable powers of the court. The ultimate consideration of the court in such cases is the best interests and welfare of the children brought before it. Helton v. Crawley, 241 Iowa 296, 309, 310, 41 N.W.2d 60, 68, 69, points to this rule and states:

"* * * In Herr v. Lazor, 238 Iowa 518, 527, 28 N.W.2d 11, 16, we reannounced the following statement in Jensen v. Jensen, 237 Iowa 1323, 1324, 1325, 25 N.W.2d 316, 317: 'We have said time and again, and the modern authorities agree, that in a matter of this kind the welfare of the child is superior to the claim of either parent and the wishes of the parent are entitled to little if any consideration.' Statements of like import have been many times expressed by this court. [Citations]"

Durst v. Roach, 245 Iowa 342, 343, 344, 62 N.W.2d 159, 160, follows the foregoing holdings and cites the Crawley case, supra, and many other authorities.

Patzner v. Patzner, 250 Iowa 155, 159, 93 N.W.2d 55, 57, a divorce case involving child custody, states:

"It is well settled in Iowa that the best interests of the children must govern in these cases, and all other considerations, such as parental rights, must yield readily to this determination."

II. The trial court found Nancy Ball was not a fit and proper person to have the custody of Anthony and that it would be for the best interests of Anthony that Mr. and Mrs. Elmer B. Ball be awarded such custody. The parties and witnesses appeared before the trial court and its findings are entitled to substantial weight. As thus considered the record requires our concurrence in the foregoing findings.

The evidence shows that after Anthony's birth, Nancy and Robert Ball were twice separated and reconciled. The second separation was in April 1957. Anthony was then one year old. Mr. and Mrs. Elmer Ball had previously cared for him temporarily from time to time. At the time of the second separation Nancy telephoned them to come and get Anthony. They drove to her apartment and Nancy handed them the child and his clothes and, according to Elmer Ball, said:

" 'I want you to take care of this child, you are more qualified. I want to run around and have a good time, and I don't want to take care of the child.' "

The Ball grandparents cared for Anthony for approximately seven weeks. During that period Nancy visited the child only about one hour once each week or two. Then defendants Mr. and Mrs. Brody drove from Council Bluffs to Atchison and took

Nancy and Anthony to their home for a visit of ten days. Upon her return to Atchison in July 1957 she and Anthony reoccupied the apartment where they had formerly lived with Robert Ball. Elmer Ball testified Nancy had agreed she would conduct herself as a mother should and would take care of the child.

There was substantial evidence Nancy did not keep Anthony clean, frequently left him unattended and otherwise neglected him, and that she drank liquor and kept company with men other than her husband. Among witnesses so testifying were a husband and wife in whose care Nancy had often left Anthony from the time he was two months old. Frequently when she came for the baby her breath smelled of liquor. On one occasion Nancy called for and took him at 5 a. m. She had been drinking and had difficulty walking. She departed in a car occupied by a woman and two men, neither of whom was her husband. There was evidence that while she was separated from her husband, between July and October 1957, a male acquaintance frequently visited her at her apartment, sometimes when Anthony was there. She admitted having had at least two dates per week with this man, for several months, and that she had gone into taverns and elsewhere with him but she denied any misconduct or that she drank to excess.

Since May 1958 Nancy worked in the office of an insurance company in Omaha, Nebraska. Mrs. Brody has been employed as a laboratory technician and Mr. Brody as railroad trainman. No one in the family has been in a position to care for Anthony. He has been taken to a nursery home at 7:45 a. m. each working day and cared for there until 5:15 p. m. Although it may be assumed the nursery is properly operated, that method of caring for Anthony must have meant that he has had little family life during his waking hours.

Elmer B. Ball owns his home one mile from Atchison. It consists of four rooms and bath. He has worked for a manufacturing company for seventeen years. The only other occupant of the house is Mrs. Ball who has no outside employment. The house is not large but under the circumstances it appears adequate and Elmer Ball expressed his willingness to enlarge it if given custody of Anthony, when the child becomes older. The conduct of Mr. and Mrs. Elmer Ball, shown in the record,

impresses us as indicating their stability and their affection for their grandson. We affirm judgment of the trial court awarding them the custody of Anthony.

Our conclusions above-noted render unnecessary the determination of the validity and effect of the judgment of the district court of Atchison County, Kansas, in the divorce suit between the parents of Anthony.

The judgment of Pottawattamie District Court is affirmed. —Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.