MARIAN WERLING, Appellant, v. MARY HEGGEN, Appellee.

No. 39684.

JUNE 24, 1929.

*Lovrien & Lovrien,* for appellant.

*C. W. Garfield,* for appellee.

STEVENS, J.—George and Inger Werling were married December 22, 1923, and Marian, whose custody is involved, was

born about 11 months later. The mother, after a protracted illness, died of tuberculosis, July 30, 1927. The parents of Marian lived together only a portion of the time. The cause of their estrangement does not appear from the record, but it was finally complete. The mother was for a time a patient at the Oakdale Sanatorium, but, for several weeks preceding her death, was at the home of her parents. The estrangement between the husband and wife appears to have extended to their parents, and, at the time of the trial, no sort of communication existed between them.

Marian was born with some defect in her heart, which all of the physicians agree will result in her death before maturity. This fact, with other circumstances in the case, presents a pathetic situation. The right of the father, both moral and legal, to the society and control of his motherless child is paramount, save only when it has been lost by his voluntary relinquishment, or by judicial decree based upon the best interests of the child. *Winter v. Winter*, 184 Iowa 85; *Risting v. Sparboe*, 179 Iowa 1133. There has been no voluntary surrender of Marian by her father to the maternal grandparents. The father is employed by, and resides with, his parents. He has no other home. So far as the record discloses, he is in good health, and able, in every way, to provide for the child proper medical care and all other necessities. His mother was present as a witness upon the trial, and expressed her willingness to receive the child into her home and to give it the best care of which she is capable.

It is not claimed by appellee that the paternal grandparents are not proper persons to have the custody of Marian. It is appellee's contention that Marian has been in her care for some time before, and at all times since, the mother's death; that the child has formed attachment to, and found comfort in, her present situation.

While not wholly persuasive, the testimony of the physicians as to the possibility of serious consequences that might ensue if the child should be removed from her present surroundings to another place, strange to her, does impel caution in dealing with the situation. The child has, at times, fainting periods, which are said to be the direct result of the physical defect referred to. It was the opinion of the medical experts that Marian should be carefully guarded against everything that will tend to excite or make her nervous. Neither the father nor his parents visited the

mother during her illness, nor have they had anything to do with Marian since her mother's death. More than a year elapsed at one time during which the father did not see his child. The problem presented is one of the greatest difficulty. Neither the wishes nor the welfare of the grandparents is in any controlling sense involved. On the one hand is the moral and legal right of the father, and on the other, the welfare of the child, which the law, when properly invoked, will always guard and maintain. Well might both the maternal and paternal grandparents in this case relent the bitterness that has made them enemies, and unite in tender solicitude and devotion for the comfort and welfare of this frail child, already under sentence of death. Could the father know the loneliness and grief that will forever clutch his heart when this frail flower has permanently faded, the causes which estranged him from his wife's family would seem small, indeed.

Our decision must be responsive to the question: What is for the best interest of Marian? The father has, so far, declined absolutely to visit Marian in her present home. She is entitled to his love and care. His father, while on the stand, said that appellee and the members of her family would not be welcome at his home, and that, if the father should be awarded custody of Marian, they could come there only for the purpose of visiting her. The expression of the maternal grandparents was somewhat more generous. Although opportunity has on a few occasions been presented, neither the father nor his parents have manifested a disposition to speak to, or become familiar with, Marian. Possibly these manifestations should not be attributed to any lack of affection for or interest in the child. While the mother was a patient at the Oakdale Sanatorium, her husband wrote her a letter, in which he said: "You're just as dirty a liar as ever." When testifying as a witness, he admitted writing the letter, and said: "I have not changed my opinion a bit." Whatever may be the facts or the provocation for the feeling manifested, it does not indicate that sort of kindliness or spirit so imperatively essential to Marian in her unfortunate condition. No financial aid has been contributed by the father since the death of the mother to the support of Marian, nor has he in any way sought openly to otherwise aid in her comfort and happiness.

Two actions were commenced by the wife for divorce. One

was dismissed, and the other, commenced a few days before her death, was still pending. No presumption should be indulged against the husband because of these actions, neither of which was ever tried. They do, however, indicate somewhat the feeling of the wife in her extremity. Shortly before her death, she signed an agreement with her mother, relinquishing Marian to her, and expressing the desire that she be left in her care and keeping. The same wish and desire were expressed in her will. We shall assume that the father and paternal grandparents who so earnestly desire the custody of Marian possess the normal affection for her, and that, if received in their home, she would receive the best of care.

Speaking from the bench, the trial court, when all of the interested parties were present, reviewed and analyzed the evidence at considerable length. What was then said is set out in the record. This summing up of the evidence in the presence of the parties makes unnecessary further recitals therefrom. If Marian were in normal health, there would be far less reason for the conclusion reached than in the present circumstances. No doubt, Marian has become strongly attached to her grandmother and the other members of the family. She is provided with a good home. Her paternal grandparents, as well as her father, are almost strangers to her. Her delicate health must be given great weight in arriving at our conclusion. We are persuaded that, all considered, the welfare of Marian will be best conserved by leaving her in the home where she now is. The restraints placed upon the father by the decree were as liberal as they could be made, consistent with the child's welfare. If properly cultivated, in due time the father may win the affection of his daughter, and thereby contribute most generously to her, and his own, happiness. The maternal grandparents should put nothing in his way that will prevent him from freely exercising all of the privileges granted by the decree.

Of course, our discussion is directed to conditions as shown by this record. What modification, if any, future conditions might justify, is not involved in this decision.—*Affirmed.*

ALBERT, C. J., and FAVILLE, DE GRAFF, and MORLING, JJ., concur.