Joseph A. Suozzi, J.
In this habeas corpus proceeding, the petitioners seek an order awarding them permanent custody of the individual respondent’s 12-year-old son. The respondent was divorced from the infant’s father shortly after his birth. The petitioners, who are the respondent’s mother and stepfather, were given custody of the child by the mother about the time of her divorce. The grandparents have exclusively maintained and reared the child ever since, except for two brief periods when the mother took back the child while he was 6 months old, and 3 *398 years of age. The respondent is now remarried, and both she and her husband desire to assume responsibility for the custody and care of her child.
At the outset, reference must be made to the grandparents’ claim that the mother’s desire for custody is “ calculated ”, and deliberately designed to pressure a large sum of money from them. At the hearing, the grandmother testified that a demand of $10,000 was made. This alleged demand is stated to be prompted by knowledge that the respondent’s stepfather, Mr. Laub, had come into an inheritance. The testimony shows that he is the income beneficiary of a substantial trust created under the will of a deceased brother. The infant herein is a remainderman.
This court finds that the testimony of the petitioners on this point is not credible. The evidence does not support even the inference that the mother’s request for custody was motivated, in any manner, by avarice or other financial consideration. The court is convinced of the mother’s sincerity, and of her real interest in the child.
The mother’s domestic and economic circumstances heretofore precluded all but nominal contributions towards maintenance of her son. The evidence discloses, however, that she visited him at fairly regular intervals. Since her remarriage, the mother has been living with her husband in an apartment at East 141st Street in The Bronx. The respondent’s husband is employed as a parking garage attendant, and his limited earnings are partially used to support two children of a prior marriage.
Testimony was introduced by the grandparents to establish the undesirability of the environment in which the mother resides. A fairly high incidence of crime and delinquency was shown to prevail in that area, which is densely populated by mixed racial groups living in tenement and apartment buildings. The neighborhood, without doubt, is not comparable to the attractive suburban residential section of Great Neck, in which the grandparents reside. While the mother’s husband testified concerning the purchase of a home in New Jersey, no definite arrangement in that respect had been made at the time of the hearing. A custody contest between parent and nonparent, however, does not resolve itself into a simple factual issue as to which party affords the better surroundings. (See People ex rel. Portnoy v. Strasser, 303 N. Y. 539, 543-544.)
The issues presented in this proceeding are unlike the frequent but unhappy situations where the contest for custody is between parents. The court in such cases must make the best available choice. Here we have a case where a parent left her *399 child with a grandparent for most of the infant’s lifetime, and then seeks the child’s return. (Cf. Matter of Benning [Nigro], 278 App. Div. 873, affd. 303 N. Y. 775.)
The court’s first concern in a proceeding of this kind, where the judge acts as parens patriae, is to do what is best for the interest of the child (Finlay v. Finlay, 240 N. Y. 429, 431; People ex rel. McCanliss v. McCanliss, 255 N. Y. 456, 461). This statement, however valid in a contest for custody between parents “ cannot stand without qualification in a contest between parents and nonparents. The mother or father has a right to the care and custody of a child, superior to that of all others, unless he or she has abandoned that right or is proved unfit to assume the duties and privileges of parenthood.” (People ex rel. Kropp v. Shepsky, 305 N. Y. 465, 468.)
The courts have therefore sanctioned the withholding of custody from a parent who has abandoned or transferred the parental right, either expressly or by implication (Matter of Benning [Nigro], supra; Matter of Bock [Breitung], 280 N. Y. 349; Matter of Stuart, 280 N. Y. 245), in recognition of the principle that while a parent ordinarily is entitled to the custody of a child, the welfare of the child may be superior to the claim of the parent (cf. Matter of Gustow, 220 N. Y. 373, 377). The burden of proof, however, rests not upon the mother to show that the child’s welfare would be advanced by being returned to her, but rather upon the nonparents to prove that the mother is unfit and that the child’s well-being requires its separation from the mother (People ex rel. Kropp v. Shepsky, supra, p. 469).
The petitioners in this case are persons in their sixties, of comfortable circumstances, who reside in a residential area in G-reat Neck commensurate with their means. The child has been and is their whole life. The court was impressed with the subject of this proceeding — a 12-year-old boy who is well adjusted, intelligent, well mannered and exceptionally mature and articulate. His scholarship, conduct and bearing are such, according to the principal of his school, who testified, that any father would love to have a son like him.
There can be no doubt of the boy’s happiness in his present circumstances. Dutiful as he is, it would be with a great deal of inward reluctance, disappointment and heartache that he would leave his present surroundings for the unfamiliar one which the respondent holds open to him. Maintaining himself always as a respectful and obedient son, he has nonetheless convinced the court that if the decision were his to make, he would most certainly prefer to remain with his grandparents. *400 The child’s own preference, while not controlling, is not to be ignored (People ex rel. Elkins v. St. Coleman’s Home, 205 Misc. 432).
From the evidence adduced at the hearing, it is unequivocally clear that the environment in which the boy presently exists is much superior to the one to which he would be transferred, and that the petitioners have done an exceptionally good job in the rearing of this young man. The boy has also done exceedingly well in school, and is attending one of the better public school systems in the State of New York.
Notwithstanding the above, the court can make no finding of unfitness by the mother, nor an abandonment or neglect of the child to the point where the court would treat the respondent as an outcast. However critical we may be of her failure to exercise the normal responsibilities of a mother, in spite of her difficult circumstances, we must nevertheless recognize her as a mother, and her rights must be regarded. It is obvious that a great deal of ill will has been generated and nourished over the years between the respondent and her mother and stepfather. The attempts of all parties at the hearing to prove the respective unfitness of the other were entirely unnecessary, and there is no excuse therefor.
We have here a situation where despite the natural filial love which must flow from any son to a mother, there has been a deeper and greater bond established between the infant and his grandparents than between himself and his mother. This is natural under the circumstances. It is natural, too, that this boy would not want to give up this very happy relationship and to substitute an entirely unfamiliar environment and less fortunate circumstances for the ones that he knows and has come to accept as part of his life.
In the court’s opinion, this case need not turn upon any finding of neglect, abandonment or unfitness, but simply upon what is best for this child.
In view of the court’s feeling that there can be no finding of unfitness or abandonment, the court cannot deny to this mother her recognition as a mother, and therefore is reluctant to deny her the right to custody. The court, however, feels even more strongly that the mere granting of custody is not a solution to this situation, nor will such custody in and of itself be the basis for the establishment of the bond which should bind a mother and her son. On the contrary, the mere transferral of custody at this time might do much to impair permanently any possibility or hope for the establishment or strengthening of this relationship. The court feels that as paramount as the mother’s *401 right to custody is, this child’s future would be seriously jeopardized by au outright snatching of this boy from his present circumstances to a situation which may be strange, unfamiliar and undesirable to him.
Nor can the court overlook the fact that the petitioners are well on in years and that this infant, upon their passing, will have no family to look to other than his mother. He has no other close relative, brothers or sisters, or even a father, to whom he might turn. A fuller life for this infant, in the court’s opinion, would demand the continuation of his close relationship with the petitioners, and the development of a more meaningful and beneficial relationship with his mother.
The court is prompted to make an observation about the strained relationship that exists between the respondent and the petitioners. Whatever the cause, the court would admonish them all that their love for this infant can be more effectively demonstrated by submerging their personal feelings and by a renewed and truly sincere effort to establish between themselves a friendlier relationship, so that they can work together for a better and fuller life for this young man. Love does not come as a stranger knocking at one’s door, but must be sought after, developed and nourished by the giving of love.
The court prayerfully hopes that the bitterness that exists between the respondent and her mother is not a forerunner of a similar relationship between the respondent and the infant. The best approach known to the court for the avoidance of such an unfortunate event is to take more seriously and to practice the direction of the Commandment to ‘ ‘ honor thy father and thy mother ”.
A change now would be detrimental to the infant until such time as a bond of love, respect and affection has been established and strengthened between the respondent and the infant. In recognition of her rights as a mother, the court grants technical custody of this infant to the respondent mother, on condition that the infant continue to reside with the petitioners. {Burns v. Burns, 23 Mise 2d 130.) Toward the end that the necessary relationship may be established, the court grants the most liberal rights of visitation to the respondent. If the court is required to do so, it will fix the rights precisely. However, the court feels that the petitioners and the respondent can demonstrate their sincerity and love for the infant by co-operating immediately for the most effective and fullest possible rights of visitation by the respondent.
The time will come, the court hopes, when this infant will not be reluctant but will feel a desire to live with the respondent *402 mother. The court does not feel that such a desire exists at present. Whether it will exist will depend, the court believes, upon the love which the respondent is prepared to give and does actually give. The court would hope that there will ■ be no “tug-of-war” between the parties for the affection of this infant. Particularly, the court would hope that the petitioners, being of a more sound financial position, would not seek to use their fortunate circumstances to deteriorate the bond between the child and his mother, but in fact would do all that they can to nourish and strengthen it.
At the hearing it appeared that the respondent was preparing to change her environment. The court feels that the respondent should proceed to improve her circumstances as well as her resources and that of her husband will permit, with the view of eventually having the child live with her. However, not knowing what these conditions might be, the court would be hard put to say that the change would be for the better. Until the court has some concrete demonstration of what these conditions are, it does not feel that a change now is warranted.
The court, in conclusion, hopes that there will be no need for its intervention in the future. However, should circumstances require it, the court will upon a proper application reconsider this matter after a year, or sooner if necessary.