DARYL and LUCENDA CHILDERS by HOLLICE CHILDERS; their father and next friend, appellant, v. JAMES CHILDRES and CLEMENTINE CHILDRES, appellees.

No. 51769.

(Reported in 136 N.W.2d 268)

JUNE 30, 1965.

James Lawyer and Paul E. Huscher, both of Des Moines, for appellant.

Philip C. Lovrien, of Des Moines, for appellees.

SNELL, J.—This is a proceeding in habeas corpus involving the custody of two minor children.

Hollice Childers brought the action as father and next friend of the children. He will be referred to as plaintiff.

The children have been living in the home of an uncle and aunt, James and Clementine Childres. They will be referred to as defendants.

The case was tried in equity in the district court and is so submitted on appeal.

Hollice and James are brothers. They spell their names differently but that is immaterial here.

The children, Daryl, now about 9½ years old, and Lucenda, now about 7½ years old, are the issue of a common-law marriage of Hollice and Shirley Childers.

Much of the testimony was set out in the trial court's Findings of Fact. The findings are supported by the record. These findings were filed July 31, 1964. We quote:

1134

"1. Hollice Childers is the father of Daryl Childers and Lucenda Childers, also known as Derril Childres and Lucinda Childres.

"2. The Defendant James Childres is a brother of Hollice Childers, and he and his wife, Clementine, have no children of their own.

"3. Hollice Childers is thirty-two years of age and has been employed by Ford Motor Company for the past eleven years. He has resided in Detroit, Michigan, during that time. The children were born in Detroit, Michigan. In November of 1958, his wife, Shirley, the mother of the children, died of knife wounds. Hollice Childers was charged with her murder and acquitted in January of 1959. The Court attaches no significance to this charge and the outcome thereof in determining the issues in this cause.

"4. The defendants, James Childres and Clementine Childres, came to Detroit in January of 1959, at the request of Hollice Childers, and arrived on the day that Hollice Childers was acquitted of the murder charge. At the request of Hollice Childers they took the two children with them to their home in Des Moines, Iowa. At that time Derril Childres was three years of age and Lucinda Childres was thirteen months of age.

"5. The children have remained in the custody of the defendants since January of 1959.

"6. The record reflects that the defendants took the children to Detroit on a visit in the summer of 1960, staying with a sister of James and Hollice. They stayed about one week, and Hollice came to see them and the children at the sister's home on at least two occasions during that period. The exact number of times is in dispute. The defendants claim two times and Hollice Childers claims at least three times. In any event, Hollice Childers did not at that time claim his children and that is the last time he ever saw them until the trial of this cause.

"7. Over the past five and one-half years Hollice has telephoned the defendants' home in Des Moines to inquire about the children. The frequency of these calls is in dispute. The defendant Clementine Childres testified in substance that he called six or eight times in 1959, and very infrequently after that.

Hollice Childers claims he called at fairly frequent intervals over the years, both during 1959 and thereafter. He did send them toys for Christmas in 1963, and again for Easter in 1964, and a small amount of clothing for Easter in 1964. He testified that he always remembered their birthdays with cards. The defendants deny this. The record reflects without dispute that Hollice Childers has contributed nothing toward the support of the children, other than the above, during the five and one-half years that they have been in the custody of the defendants.

"8. In the spring of 1962, Hollice Childers remarried and he and his present wife, Ruby, were the only witnesses testifying on behalf of the plaintiff in this action.

"9. Hollice testified that in July of 1963 he talked to his brother, James, on the telephone and demanded custody of the children and was refused. James testified that the call was in the summer of 1962. In March of 1964 Hollice Childers' present wife, Ruby, wrote to the defendants and asked permission for 'she [sic] and Hollice' to take the children with them on their vacation to see their grandparents. No mention was made of permanent custody in that letter. In March of 1964 James sent Hollice a letter for his signature. The letter was to the effect that he, James, had furnished the sole support for the children during 1963. He wanted this in connection with his 1963 income tax return. Hollice called about this on Easter Sunday and talked to both James and Clementine. That conversation reflected that the relations between Hollice and the defendants, especially the defendant Clementine Childres, were strained. Hollice refused to sign the letter. The following day Ruby again called about the requested letter and indicated she wanted him to sign it. At that time she asked Clementine whether or not if Hollice did sign the letter they would give the children back to them. Clementine refused. Hollice did eventually sign the letter. No further communication was had until the commencement of this action.

"10. Ruby, Hollice Childers' present wife, is a schoolteacher, and in June of 1963 they purchased and now reside in a four-bedroom home in Detroit, Michigan.

"11. The defendant James Childres is forty-six years of age

and is employed by the Federal Government as a janitor in the Federal Courthouse Building in Des Moines, Iowa. His wife, Clementine Childres, does housework.

"12. The income of the defendants and of Hollice Childers and his present wife are both adequate to support the children.

"13. The defendants reside at 1330 18th Street, Des Moines, Iowa, in a five-bedroom home which they own. The testimony of the defendants and other witnesses testifying on their behalf reflect that the home is neat and clean and in all respects adequate for the children.

"14. Derril Childres has little, if any, personal recollection of his father, and Lucinda Childres obviously has none. His present wife, Ruby, is a total stranger to both of them. They call the defendants 'father' and 'mother', or words of like import normally used by children and obviously think of them as such. Both children attend the Des Moines Public Schools; and Derril will be in the third grade in September, and Lucinda in the first grade. The defendants, James Childres and Clementine Childres, are church members and attend regularly. The children attend Sunday school. James Childres is a trustee and deacon in their church and teaches an adult Sunday school class. James had an illness in 1962, which he and his wife described as a heart attack, but he is recovered and is steadily employed.

"15. Derril Childres has been troubled with asthma and bronchial difficulties since a small baby. He has required medical care and hospitalization on several occasions, and the defendants have supplied this whenever necessary.

"16. In addition to the testimony of the defendants, the Court had the benefit of six other witnesses, all of whom testified that they know the defendants and the children and have been in their home and they in theirs. The Court finds that the defendants have been excellent parents and will continue to be such, and that they have great love and affection for the children and the children have great love and affection for them. The defendants are highly regarded amongst their acquaintances in the community. The Court further finds that the children look upon the defendants as their natural parents and have no recollection of any other parents or of any other home.

."17. The children are normal, happy and well behaved for children of that age."

Until recently plaintiff has not enjoyed financial solvency. He is a utility man with Ford Motor Company. He worked three months in 1959, four months in 1960 and full time in 1961. Until he remarried he supported no one but himself. He accumulated debts. Subsequent to his remarriage plaintiff and his wife have both been gainfully employed. They have paid their debts and are buying a home. Plaintiff's interest in his children, however, has not in the past been such as to permit any interference with his own pleasure.

When defendant James Childres was ill his wife Clementine sent word for Hollice to call. She testified:

"I sent a telegram to the sister in Detroit to tell Hollice that I want him to call me. He did and I asked him for help for the children because I was so nervous never having had any children and my husband being so sick. Hollice said he would. He said he was coming to stay with me and the kids while James was sick. When I heard from him again in a week or two he told me he had hit a jackpot for $500 playing numbers in Detroit and went to New York on a vacation to visit a brother in New York. He never did come to my rescue."

This testimony is not denied.

The trial court visited at length with the children. The conversation is set out in the record. The children appear to be intelligent, alert, happy and full of imagination.

The trial court found that the best interests of the children require that they be not removed from the home of defendants and dismissed plaintiff's petition. Plaintiff has appealed.

I. The law governing this case is well settled and needs no extensive discussion.

In child custody cases the first and governing consideration of the courts must be the best interest of the child. Rule 344(f) 15, Rules of Civil Procedure. Citations unnecessary.

II. Habeas corpus actions involving custody of minors are treated as equitable in nature, reviewable de novo. We give weight to the findings of the trial court but are not bound by

them. Carrere v. Prunty, 257 Iowa 525, 133 N.W.2d 692; rule 344(f)7, Rules of Civil Procedure.

■ III. Parents are the natural guardians of the persons of their minor children. Section 668.1, Code of Iowa, 1962, now section 559, Iowa Probate Code. The right of a surviving parent to the custody of his child may be relinquished by abandonment. Carrere v. Prunty, supra.

■ IV. When plaintiff was in trouble the need of his children for care, comfort, love and affection was great. Defendants came to the rescue. For some time plaintiff's interest in the children was minimal. Except for small presents he has contributed nothing toward their support. He has never been to see them. Due to plaintiff's inattention the children do not know him. The children had never seen their stepmother until the day of the trial.

In the meantime the natural attachment and affection between the children and defendants developed. By his own actions or lack thereof plaintiff has lost the preference inherent in him as a father.

We are convinced that the children are in good hands. We are not so sure if their custody is changed.

We are not inclined to interfere in a situation that is all right.

■ V. In the alternative, in the event plaintiff is not awarded custody, plaintiff asks us to provide visitation rights.

Nothing herein is intended to deny plaintiff the right to visit his children, but no such issue was decided in the trial court and the issue is not properly before us.

The case is—Affirmed.

GARFIELD, C. J., and HAYS, THOMPSON, LARSON, PETERSON and MOORE, JJ., concur.

THORNTON and STUART, JJ., dissent.

THORNTON, J.—I respectfully dissent. In this action a father seeks the return of his children, six and eight years of age, from his brother. In the time of both mental and financial stress he requested the brother and his wife to care for his two

babies, ages three years and 13 months. At the time of trial the children were six and eight years of age.

The brother and his wife have performed, and are willing to continue to perform, a fine charitable act. During most of the five and a half years they have had the children the father has been single. Since his marriage he has improved his position to where he has adequate facilities and a wife willing and in all respects able to care for the children.

In this case it should be remembered the father of the children made the arrangements for their adequate care when he was unable to do so. He did not abandon them. It is true he did not contribute to their support, and on one occasion he should have, but at all other times the brother and his wife intended to support the children and made no attempt to obtain support for the children. They were performing a charitable act and knew it.

It is true the father did not visit the children except when they were brought to Detroit by the brother. Apparently the majority concludes because he did not contribute to their support, did not frequently visit the children and now they do not know him and his wife, coupled with the affection the children now have for the uncle and aunt, the father has lost the preference inherent in him as a father.

Paragraph 18 of the trial court's findings of fact, not quoted in the majority opinion and apparently the trial court's reason for decision, is:

"The Court finds that to uproot these children after five and one-half years in the only home that they can recollect and to return them to the custody of their father, Hollice Childers, who together with his wife, Ruby, are actually total strangers to them would be very detrimental to the children and that the best interests of the children require that they be not removed from the home of the defendants and the custody remain in the defendants."

The majority adopted some of the above when it says:

"We are convinced that the children are in good hands. We are not so sure if their custody is changed.

"We are not inclined to interfere in a situation that is all right."

1140

No reason for the lack of assurance is given. Neither the trial court nor this court has found the father and his wife unfit persons to care for the children. These children were not removed from the father's custody, he made this arrangement.

Both sides, the father and his brother, are in all respects capable and able to adequately care for the children. It is also true a parting of the children from their uncle and aunt undoubtedly would be a tearful occasion. Is this enough to offset not only the inherent right of a father to live with his children but of the children's inherent right to live with their father? I think not.

It should be remembered that God placed these children with the father and we should not, except for a compelling reason, change such plan. Wealth and position are not sufficient reasons to deny parent and child the inherent right to live together. If they are, we are all in danger of losing our children.

Rule 344(f)15, Rules of Civil Procedure, provides, "In child custody cases the first and governing consideration of the courts must be the best interest of the child." Properly applied the rule is right. As applied here it deprives the child of an inherent right without reason.

The case should be reversed.

STUART, J., joins in this dissent.