Phillip Walter Halstead, a minor, by Katie Halstead Lee, his natural guardian and next friend, appellee, v. Walter Halstead et ux., appellants.

No. 52129.

September 20, 1966.

Wayne Kemmerer, of Oelwein, for appellants.

Darold J. Jack, of Oelwein, for appellee.

RAWLINGS, J.—By habeas corpus proceedings plaintiff-mother sought custody of her then 12-year-old son who had for ten years resided with defendants, his paternal grandparents. From decree by the trial court adverse to defendants they appealed. Each case of this nature must be determined according to the circumstances peculiar to it alone.

Katie Halstead Lee, hereinafter sometimes referred to as petitioner, dropped out of school while in the tenth grade. About six months later, at 16, she married James Welford McGowan. A son James was born as issue of that marriage which was terminated in 1951 by a divorce granted the husband. Petitioner was accorded custody of the son James, but since the first few years of his life he has not lived with her.

April 5, 1952, petitioner married James Frank Halstead, son of these respondents. About four months later she gave birth to a daughter, Theresa Gail, hereinafter sometimes referred to as Terry.

August 4, 1953, Phillip Walter Halstead the subject child was born, he being hereinafter sometimes referred to as Phillip.

April 5, 1958, James Halstead, father of Phillip, obtained a divorce from petitioner. Pursuant to the terms of a stipulation custody of the son was granted the father, the mother being given custody of the daughter.

Then in July 1958 petitioner married Eugene Lee, her present husband, who resided in Texas. He has been previously married and from that union twin daughters were born. The mother was accorded custody of the two girls when that marriage ended in divorce. He is required to pay $90 a month for support of these children. They spend every other weekend in the present Lee home.

At time of hearing of the case now before us petitioner was pregnant by her present husband.

Terry and Phillip were first left with respondents, their paternal grandparents in June 1954, but about two or three months later petitioner came and took them away.

Sometime in September 1955 these two children were returned to the home of respondents by petitioner but she immediately left taking Terry and Phillip with her. That same evening she called respondents from Cedar Rapids and asked them to come get the children. They complied.

Then in December 1955 petitioner again removed the two children from respondents' home but the next month returned and once more placed Terry and Phillip with them. There the children remained until after entry of the aforesaid Halstead divorce decree on April 6, 1958. At that time petitioner took Terry leaving Phillip with his grandparents. There he has since remained.

From 1958 to time of trial petitioner and Terry were visitors in the home of respondents four and possibly six times, but only a few days on each occasion. Over a period of ten years Phillip had neither seen nor been with his mother except for these limited visitations. Petitioner has sent him Christmas and birthday gifts. She has also written irregularly, but not as often as promised and this has in turn been disturbing to the boy.

Phillip's father, James, a career Navy man, married Rachel Halstead sometime after obtaining the divorce from petitioner. Apparently no children were born to that union. At time of his death on May 7, 1965, they were living in California. Rachel, a registered nurse, still lives there. The subject custody action was commenced June 22, 1965.

These respondents have unquestionably cared for and guided Phillip through his childhood physical difficulties and emotional problems. Throughout the trying periods of infancy they most satisfactorily provided his educational and religious training. With respondents he has always been happy, neat, adequately clothed, well behaved, a normal active boy, well regarded in the community, likes to fish, goes with the grandfather on fishing

trips, belongs to a community Little League baseball team, and the grandfather plays catch with him. His attendance in school and Sunday school has been as near perfect as possible and his grades in school are average or better. He possesses a bicycle, remote control gas powered toy airplane, baseball, bat and glove, a dog, and has his own bedroom.

The testimony of Geraldine Weaver, Sunday schoolteacher, discloses respondents do not use intoxicating beverages, and no deficiencies on the part of respondents in the performance of their parental duties toward Phillip.

Another independent witness, Arthur J. Fink, public schoolteacher and principal, testified to the same effect. He also said his observations disclosed no reason to be concerned about the parental adequacy of respondents in the next ten years. Also that Phillip is well adjusted and happy in his surroundings.

At time of trial the grandfather was 64, the grandmother 60. The grandfather was injured in 1963. His monthly income has been $60 from social security and he earns about $50. The government will continue to pay at least $77 a month for Phillip's care because of the father's Korean War service, which, at time of trial, was expected to be increased to about $99. This alone would produce about $209 each month for respondents.

Prior to his death the home in Oran was owned by Phillip's father but now belongs to his widow. Rachel Halstead, Phillip's stepmother, is ready, willing and financially able to assist in his support by payment of $100 a month to respondents and will place title to the home occupied by them, which she now owns, in her name and Phillip's, with right of survivorship.

While petitioner worked the Lees had a combined gross income of about $970 each month, with fixed monthly obligations in the total sum of approximately $333, leaving them about $637 before taxes. However, Mr. Lee alone has had a gross monthly income of about $713, leaving him a net of about $380 before taxes. He does not know the boy too well, thinks they can adjust to each other, but has not had much time for fishing, and has no other recreational equipment of any kind.

Petitioner's sister Mary Harrington and her husband Clayton, who live near the Lees, said they and the Lees were church-

going, nondrinking, hardworking people and the general reputation of the Lees as to morals and financial stability was very good.

Petitioner now resides in Nome, Texas, and respondents have at all times here concerned lived in Oran, Iowa.

The Lee home is modern, with three bedrooms, and in very good condition.

The Halstead home has a living room, dining room, kitchen and two bedrooms. It could use some repairs but has been and is serving its purpose very satisfactorily.

Phillip says he would like it better if his sister lived in Oran, he has not seen much of his mother, would hate to go with her and prefers to remain in the home of his grandparents, this being the only home he has ever known.

I. This being a habeas corpus action involving custody of a child, it is reviewable de novo. We give weight to the findings of the trial court but are not bound by them. Childers v. Childres, 257 Iowa 1132, 1137, 136 N.W.2d 268, 272, and Carrere v. Prunty, 257 Iowa 525, 530, 133 N.W.2d 692, 695.

II. Our rule 344(f)(15), Rules of Civil Procedure, provides: "In child custody cases the first and governing consideration of the courts must be the best interest of the child." Alingh v. Alingh, 259 Iowa 219, 144 N.W.2d 134. Over a long period of time this court has repeatedly adhered to that maxim with seldom, if ever, an exception.

Furthermore we have consistently taken the position it is highly desirable the status of a child be fixed as quickly as possible, be thereafter disturbed as little as possible, and then only for the most cogent reasons.

Also, if the person having lawful care of a child at the time its custody is sought to be changed has properly provided and supervised its social, moral and educational needs for a substantial period of time, and the child has become attached to the environment and the people who have made possible the happiness, security and comfort of its early years, a court is not justified in transferring that custody to another except for the most cogent reasons. See Kouris v. Lunn, 257 Iowa 1267, 1274, 136 N.W.2d 502, 506; Thein v. Squires, 250 Iowa 1149, 1158, 97 N.W.2d 156; Durst v. Roach, 245 Iowa 342, 346, 62

N.W.2d 159; Wiggins v. Wiggins, 239 Iowa 1279, 1297, 34 N.W.2d 607; and Jensen v. Sorenson, 211 Iowa 354, 364, 233 N.W. 717.

Moreover these views appear to be in accord with the philosophy of social interests predominant in the twentieth century, and there is no apparent plausible reason to now abandon them. See 39 N. Y. University Law Review 423, and 57 Harvard Law Review 1.

A few of the many other cases which have come before this court where we held in accord with the foregoing principles or the equivalent are as follows: Painter v. Bannister, 258 Iowa 1390, 140 N.W.2d 152; Vanden Heuvel v. Vanden Heuvel, 254 Iowa 1391, 121 N.W.2d 216; Wendel v. Wendel, 252 Iowa 1122, 1125, 109 N.W.2d 432; McKay v. Ruffcorn, 247 Iowa 195, 73 N.W.2d 78; Joiner v. Knieriem, 243 Iowa 470, 52 N.W.2d 21; Pelton v. Halverson, 240 Iowa 184, 35 N.W.2d 759; Herr v. Lazor, 238 Iowa 518, 28 N.W.2d 11; Paulson v. Windelow, 236 Iowa 1011, 20 N.W.2d 470; Ellison v. Platts, 226 Iowa 1211, 286 N.W. 413; Werling v. Heggen, 208 Iowa 908, 225 N.W. 952; Barry v. Reeves, 203 Iowa 1345, 214 N.W. 519; Knochemus v. King, 193 Iowa 1282, 188 N.W. 957; and Drumb v. Keen, 47 Iowa 435.

III.   This child oriented best interest concept is neither new, novel nor uncommon in the field of jurisprudence. In fact the courts of many other states employ the same or similar approach when confronted with conflicting child custody claims as exemplified by the following decisions: Armstrong v. Green, 260 Ala. 39, 68 So.2d 834; Henry v. Janes, 222 Ark. 89, 257 S.W.2d 285; Root v. Allen, 151 Colo. 311, 377 P.2d 117; Baram v. Schwartz, 151 Conn. 315, 197 A.2d 334; Hitchcock v. Thomason, Mun. Ct. of Appeals for D. C., 148 A.2d 458; Fielding v. Highsmith, 152 Fla. 837, 13 So.2d 208; Altmiller v. Forsman, 76 Idaho 521, 285 P.2d 1064; Giacopelli v. Florence Crittenton Home, 16 Ill.2d 556, 158 N.E.2d 613; Glass v. Bailey, 233 Ind. 266, 118 N.E.2d 800; State ex rel. Paul v. Peniston, 235 La. 579, 105 So.2d 228; Thumma v. Hartsook, 239 Md. 38, 210 A.2d 151; In re Adoption of a Minor, 343 Mass. 292, 178 N.E.2d 264; Forbes v. Warren, 184 Miss. 526, 186 So. 325; In re J——,

Mo. App., 357 S.W.2d 197; Wall v. Hardee, 240 N. C. 465, 82 S.E.2d 370; McKay v. Mitzel, N. D., 137 N.W.2d 792; Long v. McIninch, Okla., 264 P.2d 767; Commonwealth ex rel. Ruczynski v. Powers, 206 Pa. Super. 415, 212 A.2d 922; Commonwealth ex rel. Shamenek v. Allen, 179 Pa. Super. 169, 116 A.2d 336; Smith v. Smith, 188 Tenn. 430, 220 S.W.2d 627; King v. Shrum, Tex. Civ. App., 244 S.W.2d 720; Trotter v. Pollan, Tex. Civ. App., 311 S.W.2d 723; Stout v. Massie, 140 W. Va. 731, 88 S.E.2d 51; and Morris v. Jackson, 66 Wyo. 369, 212 P.2d 78.

IV. Furthermore our relatively broad best interest of the child principle is not without respectable general authoritative support.

In 1963 the American Bar Association Section of Family Law adopted a model custody act which provides: "Custody may be awarded to persons other than the father or mother whenever such award serves the best interests of the child. Any person who has had de facto custody of the child in a stable and wholesome home and is a fit and proper person shall prima facie be entitled to an award of custody."

In 67 C. J. S., Parent and Child, section 11, pages 635, 636, is found the following statement: "A parent's right to the care, custody, and control of a minor child is merely a prima facie right, and, even though the parent is a fit and proper person, his or her right to such care, custody, and control is not an absolute right, even though there has been no voluntary abandonment of the right; and it may be invaded or entirely nullified."

Then 25 Am. Jur., Habeas Corpus, section 80, page 205, states: "* * * these cases [habeas corpus—child custody] are decided not upon the legal right of the petitioner to be relieved from unlawful imprisonment or detention, as in the case of an adult, but on the court's view of the best interests of those whose welfare requires that they be in custody of one person or another; and hence, a court is in no case bound to deliver a child into the custody of any claimant or of any person, but should, in the exercise of a sound discretion, after a careful consideration of the facts, leave it in such custody as the welfare of the child at the time appears to require. In short, the child's welfare is the supreme consideration, irrespective of the rights and

wrongs of its contending parents, although the natural rights of the parents are entitled to due consideration."

·And in 27 Am. Jur., Infants, section 108, page 829, is this declaration: "Wherever a controversy arises between different claimants to the custody of a child, the probable welfare of the child is the controlling consideration to which all questions of superior legal right are entirely subordinated. This test is applied in contests not only between the father and mother of the child, but also between either or both of the parents and strangers, or where neither parent of the child is a contestant."

See also Madden, Persons and Domestic Relations, Hornbook Series, page 376; Peck, Domestic Relations, pages 371–372; 39 N. Y. University Law Review 432; and annotations, 15 A. L. R.2d 432, 435.

V. The courts of some states, demonstrably ·Michigan, Nebraska and New York, have taken the position custodial rights of natural parents control over all third parties in the absence of abandonment or parental unfitness. See In re Mathers, 371 Mich. 516, 124 N.W.2d 878; Raymond v. Cotner, 175 Neb. 158, 120 N.W.2d 892; and People ex rel. Kropp v. Shepsky, 305 N. Y. 465, 113 N.E.2d 801.

To affirm in the case now before us would in effect, if not in fact, be to adopt what is to us the alien view of these states despite the frailty of that position as illustrated by the case of Laub v. Caltobelotta, 33 Misc.2d 397, 219 N. Y. S.2d 363, where the court circuitously adopted our best interest of the child approach.

VI. In the difficult process of determining what is best for a child we do not close the door to all rights of a natural parent in his or her offspring.

Where parental rights have not been previously adjudicated it is presumed, absent evidence to the contrary, a child's welfare will be best served by leaving or placing it in the custody of a parent.

But this presumption, being rebuttable, and more nearly an inference, is resorted to as an aid to the court in ultimately determining what is for the best interest of the child. Painter v. Bannister, 258 Iowa 1390, 1397, 140 N.W.2d 152, 156; Kouris

v. Lunn, 257 Iowa 1267, 1271, 136 N.W.2d 502, 505; Thein v. Squires, 250 Iowa 1149, 1157, 97 N.W.2d 156; Finken v. Porter, 246 Iowa 1345, 1348, 72 N.W.2d 445; and Herr v. Lazor, 238 Iowa 518, 525–527, 28 N.W.2d 11.

■ Also, in the case of In re Guardianship of Plucar, 247 Iowa 394, 403, 72 N.W.2d 455, this court said: "We have uniformly held Code sections 668.1, 668.2 [section 633.559 Iowa Probate Code], which say a surviving parent becomes the natural guardian of his minor children and entitled to their custody, do not provide for an absolute right in the parent but only a presumptive right which must give way where it has been relinquished or where the welfare and best interests of the child call for other custody." And see Childers v. Childres, 257 Iowa 1132, 1137–38, 136 N.W.2d 268, 272.

We are satisfied any presumptive or inferential right which might in law attend this petitioner as Phillip's mother is decisively overcome and clearly rebutted by the greater weight of the evidence, by the showing made that Phillip's best interests will be better served if respondents retain custody.

■ VII. Children too have rights which should be jealously guarded by the courts.

Phillip's home has been with the respondents for the past ten years. He belongs there. His roots are planted there and he does not want to go elsewhere.

While not necessarily controlling, the wishes and right of this boy to remain in the home of his paternal grandparents should be recognized and accorded all possible deference. It is his life with which we deal, not that of petitioner or respondents. Lursen v. Henrichs, 239 Iowa 1009, 1015, 33 N.W.2d 383; Barry v. Reeves, 203 Iowa 1345, 1350, 214 N.W. 519; and Knochemus v. King, 193 Iowa 1282, 1286, 188 N.W. 957. See also annotations, 99 A. L. R.2d 954, and Nelson on Divorce and Annulment, Second Ed., section 15.19.

As we view the situation it would be morally and legally wrong to treat the rights of this boy loosely, to summarily deal with him as a chattel or an expendable. There is neither need, cause nor legal justification for so doing.

Under the factual situation here disclosed it is Phillip's right to remain where he is.

VIII. Petitioner places considerable stress upon the age and financial status of respondents.

This argument is far from persuasive and most assuredly not controlling.

A person the age of respondent grandfather has a life expectancy of better than 12 years, and the school principal in Oran saw no reason to be concerned about the parental adequacy of respondents in the next ten years. This alone answers any age problem presented. See Painter v. Bannister, 258 Iowa 1390, 1397, 140 N.W.2d 152, 156; Carrere v. Prunty, 257 Iowa 525, 529, 530, 133 N.W.2d 692, 695; and Pelton v. Halverson, 240 Iowa 184, 35 N.W.2d 759.

The grandparents and Phillip live in a comfortable home. They have always had and there is every reasonable cause to believe they will continue to receive sufficient means with which to provide the essentials of life for themselves and their grandson.

While no legal obligation is imposed upon Rachel Halstead, Phillip's stepmother, it is only reasonable to assume she will do as was promised when testifying under oath in the subject case. This means title to the Halstead home in Oran will be in Phillip and Rachel with right of survivorship, and the $100 she receives each month from the Navy as widow of Phillip's father will be forwarded to respondents. They will thus receive about $309 monthly, from which $50 will be paid on the home mortgage balance, leaving them a net of approximately $259 each month. In any event Rachel Halstead has kindly permitted respondents and Phillip use of the Oran home and will undoubtedly continue to do so.

On the other hand petitioner's husband has had two kidney stone attacks, and in the past received a gross monthly income of not more than $713, but has fixed commitments of approximately $333, leaving him about $380 per month before taxes. And by now the Lees probably have another dependent.

So petitioner is hardly in a position to offer Phillip any of the worldly goods or conveniences which might accompany as-

sured or certain wealth. She can actually guarantee him little or no financial advantage which he cannot reasonably expect by remaining in the home of these respondents.

Furthermore, any inconstant wealth and pecuniary advantage which may be supplied in the home of this long absent parent in a strange and totally different environment are at best a poor substitute for the loving care, affection, understanding, companionship and guidance in a wholesome atmosphere which has been abundantly provided for a decade in the only home this now well adjusted 13-year-old boy has ever really known. See In re Guardianship of Lehr, 249 Iowa 625, 635, 87 N.W.2d 909; Jensen v. Sorenson, 211 Iowa 354, 364, 233 N.W. 717; and Barry v. Reeves, 203 Iowa 1345, 1348, 1349, 214 N.W. 519.

IX. Petitioner leans rather heavily on Wooley v. Schoop, 234 Iowa 657, 12 N.W.2d 597, (a 5 to 4 decision), and Rice v. Messingham, 244 Iowa 111, 55 N.W.2d 925. In the determination of the problem now before us these cases are neither factually comparable nor legally persuasive.

In Wooley the custodial defendant was not a blood relative of the subject child, while here the respondents are Phillip's paternal grandparents.

Also, the majority opinion in Wooley cited and relied in large part upon Van Auken v. Wieman, 128 Iowa 476, 104 N.W. 464, and Brem v. Swander, 153 Iowa 669, 132 N.W. 829, but they were clearly repudiated in Risting v. Sparboe, 179 Iowa 1133, 162 N.W. 592, L. R. A. 1917E 318, and Barry v. Reeves, 203 Iowa 1345, 214 N.W. 519.

As previously disclosed, most if not all of our decisions in the past 20 years have adhered to a view clearly contrary to that expressed in the Wooley case. To the extent the majority opinion in Wooley v. Schoop, supra, is in conflict herewith it is now specifically overruled.

In Rice v. Messingham, supra, a mother prevailed over the custodial aunt and uncle when it was shown the uncle once operated a tavern but lost his license for selling beer to minors; had been convicted of operating an automobile while intoxicated, appealed and on affirmance served 90 days in jail; and had become increasingly addicted to the consumption of beer. The Rice case is not even factually in point.

X. We find no cogent reasons which compel or even justify Phillip's removal from the suitable, wholesome surroundings he has come to know and enjoy. Stated otherwise there is no good cause or compelling reason to attempt any experimental transplantation of this happy, well adjusted boy. He should not now be compelled to exchange for known love, companionship and security the uncertainties of a speculative, unknown and to him somewhat frightening future.

Too many times in his short life this lad has been subjected to the severe emotional experience of being shunted from one home to another for no reason attributable to him or these respondents. Grant of custody to petitioner would only serve to expose him to the hazards of another and possibly more severe physical and mental upheaval than he has encountered in the past. See Thein v. Squires, 250 Iowa 1149, 1158, 97 N.W.2d 156; In re Guardianship of Plucar, 247 Iowa 394, 403, 72 N.W.2d 455; and Durst v. Roach, 245 Iowa 342, 346, 62 N.W.2d 159.

XI. The decree entered by the trial court in this case holds, in effect, petitioner has shown herself to be the mother of Phillip and absent proof she is not a fit and proper person is ipso facto entitled to his custody despite the fact, (1) she was a participant in "bouncing" him from one home to another during the first five years of his life; (2) she has been long absent, being to him relatively unknown; (3) her present and third husband is to him a total stranger; (4) he has lived with respondents ten years in the only home he has ever really known; (5) he has there been given the best possible educational and religious guidance; (6) he has there been adequately, properly, understandingly and lovingly cared for; (7) he is there a happy, healthy, normal, well adjusted boy; and (8) he does not want to go elsewhere.

We are persuaded the trial court's decree is clearly contrary to the greater weight of the evidence, in conflict with the humanities of the case, and inconsistent with rule 344(f)(15), supra, as repeatedly construed and applied by us.

Reversed and remanded for decree in accord with this opinion.

GARFIELD, C. J., and LARSON, SNELL, MOORE, STUART and MASON, JJ., concur.

Dissent by BECKER, J.

THORNTON, J., dissents.

BECKER, J.—I must respectfully dissent.

The rule in child custody cases that the first and governing consideration must be the best interest of the child is well established. Rule 344(f)15, R. C. P.; Painter v. Bannister, 258 Iowa 1390, 140 N.W.2d 152; Alingh v. Alingh, 259 Iowa 219, 144 N.W. 2d 134. Further it is not necessary that a parent be found unfit to care for the child in order that custody be awarded to another. This rule is not announced in either Painter v. Bannister, supra, or in this case but is implicit in the results of both. I do not disagree with such rules or with the philosophy behind them.

Having said this much, a protest should be made against the apparent willingness of this court to allow the principle, that a child once well situated should not be uprooted or moved, to harden into a conclusive presumption that the status quo must be maintained at all costs and in every situation. This is a compelling factor, but should not be conclusive. Yet I think that it has become a conclusive factor with this court.

There is much in the record to indicate that these grandparents will find increasing difficulties in rearing this boy. There is much more in the record to indicate that this mother is at least as well able to care for her son as are the grandparents.

The majority gives only lip service to the preferential right to custody that has been established in the parents not only by this court's prior decisions but by statute.

Presumptively the parents, or the survivor of them, if one is dead, have the right to custody of their minor child. Allender v. Selders, 227 Iowa 1324, 291 N.W. 176. This presumptive right must give way where it has been relinquished or where the welfare and best interest of the child calls for other custody. In re Guardianship of Plucar, 247 Iowa 394, 72 N.W.2d 455. The present relevant statute was enacted in 1963. It reads: "The parents of a minor, or either of them, if qualified and suitable, shall be preferred over all others for appointment as guardian." Acts of the Sixtieth General Assembly, chapter 326, section 559.

This section replaces sections 668.1 and 668.2 of the Iowa Code and preserves in similar language the preference noted above. Our interpretation of the effect of this new statute (promulgated as part of our new Iowa Probate Code) leaves the thrust of the statutory presumption unchanged. Carrere v. Prunty, 257 Iowa 525, 530, 133 N.W.2d 692, 695. This preference noted in the statute has not, in my judgment at least, been overcome.

I cannot agree that affirmance here would be tantamount to adoption of the rule that parental preference must control in the absence of abandonment or parental unfitness. It would simply give weight to our statutory and common-law preference. I respect the American Bar Association's section on family law and other eminent authority quoted by the majority. However, the proposed code on family law has not been adopted in this state. That portion which states that de facto satisfactory custody shall prima facie entitle the person having such custody to an award is, it seems to me, in conflict with our Iowa statute stating that parents, if qualified and suitable, shall be preferred over all others for appointment as guardian. Where such a conflict occurs the letter and the spirit of our statutes should control over those proposed by the American Bar Association section on family law.

I would next protest this court's increasing disregard of trial court's findings. This protest was well articulated in the dissent in Thein v. Squires, 250 Iowa 1149, 1161, 97 N.W.2d 156: "The record clearly indicates the trial court carefully and deliberately weighed the matter. We have repeatedly said the trial court is often in a much better position than we to solve such a perplexing problem, and I think that pronouncement was never more applicable. Here the court visited with these children in his chambers in addition to seeing and hearing the witnesses. Its finding, then, should not be disturbed without compelling reasons, and I find none. Finken v. Porter, supra, 246 Iowa 1345, 1347, 72 N.W.2d 445, and citations, Joiner v. Knieriem, supra, 243 Iowa 470, 481, 52 N.W.2d 21, and citations, and Slattery v. Slattery, 139 Iowa 419, 116 N.W. 608, refer to the trial court's discretion on matters of this nature."

It seems to me that the objection is well taken. Where the

ability of human beings to take care of children is at issue, a cold printed record is a very unsatisfactory basis for decision. This is not to say that the trial court should never be overruled in these cases. But where, as here, there are at least as many reasons for the trial court's decision as there are against it, the superior position of the trial court to observe the witnesses and weigh the evidence should be given due weight.

The record indicates that this plaintiff has shown without contradiction that she has made a success of her present marriage. She has successfully cared for and reared her daughter, Terry. She has a place of respect and acceptance in the community. She has a good husband and a good home in which to rear Phillip. There is no evidence against her that does not date back at least seven years.

Both before and after the divorce plaintiff did much to show her affection and sense of responsibility toward her children. There is evidence that in 1954, James Halstead brought the children to his parents. All other evidence, without exception, finds plaintiff caring for the children when they were not with their grandparents. True it is that they were with their grandparents a great part of the time. Yet it was invariably plaintiff who brought them there and took care of them at other times.

Plaintiff's action in assigning her full allotment check was a further act of responsible concern. She also showed her responsible attitude by the frequency of her visits and her letters. There is a conflict as to the number of visits and the number of letters, but it is clear that plaintiff has traveled from the vicinity of Beaumont, Texas, to Oran, Iowa (some 1200 miles), at least four and perhaps six times since the 1958 divorce. All trips involved seeing and being with her boy, some involved care for the welfare of her girl.

The age and the financial status of the grandparents militate against their ability to continue to meet the responsibilities incident to rearing this boy. The age differential between adult and child would be markedly decreased by affirming the trial court's opinion. Sister and brother would be reunited. The family situation into which Phillip is to move has been shown to be good,

with a seven-year history of stability. The relevant time for the determination of this problem is the present, not seven years in the past.

There is no evidence that this youth is disturbed or is other than a quite well adjusted boy. He has not been moved from family to family in such a way as to foster uncertainty or create instability. His contacts with his mother have been reasonably frequent. His contacts with his sister have been more frequent and of longer duration. We have no evidence, expert or otherwise, that the move necessitated by the trial court's decision would place an intolerable, or even undue, strain on his human ability to adjust. These factors provide cogent reasons for ordering this change in custody.

Where, as here, the various factors from which a decision must be forged are at least in equipoise, I believe that the statutory preferential presumption and the trial court's findings should both be given their due weight. I would affirm.