Robert Dale STAFFORD, Jr., Appellee,

v.

Donna TAYLOR, Appellant.

No. 52908.

Supreme Court of Iowa.

May 7, 1968.

Robert C. Oberbillig, Donald H. Canning, and Barton L. Schweiger, Waterloo, for appellant.

Fulton, Frerichs & Nutting, by Joe Nutting, Waterloo, for appellee.

RAWLINGS, Justice.

Plaintiff, as next friend, brought habeas proceedings to secure custody of four year old grandson previously placed in care of and residing with defendant.

Trial court sustained writ and defendant appeals. We reverse.

Unavoidably each case of this nature must be resolved upon the basis of circumstances peculiar to it alone. As a result, the involved tragic factual situation must be set forth at some length.

Identification of parties, to whom reference will hereafter be made, is essential to an understanding of the case.

Robert Dale Stafford, Jr., subject child was born July 17, 1963. He has two sisters, Roberta 8, Tresa 5. They are not here directly involved.

Juanita Marvets, petitioner and maternal grandmother of Robert, is a resident of Bell, California, temporarily living with the Patries at time of trial.

Mr. and Mrs. Clyde Patrie reside in Waterloo, the latter being a sister of petitioner and Gene Taylor.

Donna Taylor, also a Waterloo resident, is custodial defendant in this case.

Gene Taylor, Donna's husband, is the brother of Mrs. Patrie and petitioner.

Mr. and Mrs. Don Roe, of Waterloo, are related to none of the other parties here concerned.

Robert's father apparently abandoned him, his sisters and their mother. They then began living with petitioner in Whittier, California. The mother died March 15, 1966, and Robert was taken into the Taylor home, also at that time residents of California.

The Taylors separated. Persuaded by petitioner, Donna, in August 1966, surrendered the boy to her. He remained with the grandmother about a week. She then placed him with Mr. and Mrs. Jerry Niedert, friends of petitioner, where he remained about three months.

Following that sojourn Robert was sent to live with Mr. and Mrs. Irving Randall, some other friends of the grandmother. The boy remained with these people until about Christmas, 1966, at which time he was returned to petitioner. Calls were promptly made to the Roes and Taylors, the latter being apparently then reconciled and living in Waterloo, urging they come to California for Robert or, arguendo she would place him in a state institution.

Gene Taylor and Don Roe drove to California, secured written consent of the grandmother to remove the boy and his sister Tresa from that state, and January 3, 1967, returned with them to Waterloo. Robert was taken into the Taylor home and Tresa went to live with the Roe family, where each child has since remained.

The second week in April 1967, petitioner came to Iowa, her stay here being with Mr. and Mrs. Patrie as aforesaid.

June 15, following an altercation, the Taylors separated. Gene then moved in with the Patries.

Four days later Juanita Marvets instituted the instant habeas action.

June 22, Mrs. Taylor filed for divorce.

Trial of the case with which we are here concerned commenced June 23, and at that time petitioner contemplated return to California the second week in July. She did not plan to take Robert with her. In that regard it is conceded her intention is not to retain control of the child. Rather, if given custody she proposes leaving the boy with the Patries. They are interested in adopting him.

The record discloses Donna, her four children, and Robert occupy an upstairs apartment in her sister's home. It consists of a large bedroom, kitchen, and living room which converts to a bedroom at night.

Donna's income consists of support received from Gene, with $38 a month social

security for Robert. Mr. Taylor earns $3.35 an hour and works approximately 50 to 55 hours each week.

At time of their separation Gene delivered $40 to Donna, and during the approximate ten day interval from then to trial of the case at hand had given her an additional $80. He is able and willing to support Robert as a member of his family.

The undisputed evidence discloses defendant loves and cares for this boy as she does her own. He has been baptized in the Catholic faith since coming to live with the Taylors. Donna and the children attend church regularly. If at any time she cannot take the youngsters, Gene does so for her. The home is neat, Robert is always clean, well fed and clothed. He is attached to defendant, refers to her as his mother and it is she to whom he turns with any troubles. He is treated as one of the family. It is conceded Donna is a suitable person to have custody of the boy.

Most if not all of the foregoing is conceded by petitioner, Mrs. Patrie and Mrs. Roe.

It appears thirteen witnesses, produced at trial, either gave testimony as aforesaid, or it was stipulated they would if called testify substantially as set forth above relative to the home life provided Robert by Donna.

The record also discloses Gene, in testifying, said "I have observed my wife's attitude toward her children and as well toward Bobby. My 'children' has always meant all 5 of them as far as I'm concerned. I don't think that you could find any better mother any where in this world than my wife. This would not make any difference as far as her ability to be a good mother because she's separated from me. On other occasions when we have been separated I've seen the children and she's always taken good care of them. They are well fed and well provided for. I have always given them everything I can as far as money is concerned and love and respect."

At time of trial the Patries had been married six years and had five children, the youngest then being nine months. They live in a 5 bedroom home. Prior to marriage Mrs. Patrie encountered a personal problem here of no particular consequence. She too is a good mother, would like to take Robert into her home, and as aforesaid is interested in adopting him.

■ I. Our review is de novo. We accord due weight and consideration to trial court's findings but are not bound by them. Rule 344(f) (7), R.C.P., and Garvin v. Garvin, Iowa, 152 N.W.2d 206, 211. See also Ball v. Ball, 250 Iowa 763, 765, 96 N.W.2d 317, and 43 C.J.S. Infants, § 7b, page 56.

■ II. In cases of this nature the first and governing consideration of the courts must be the child's best interests. Rule 344(f) (15), R.C.P., and Garvin v. Garvin, supra.

■ III. Determination of all controversies such as that with which we are here concerned requires a judicious approach free from taint of reward or punishment, the polestar being always welfare of the child. Garvin v. Garvin, supra.

IV. Unlike most habeas proceedings involving child custody, parental rights are not here involved.

■ As heretofore disclosed petitioner is the maternal grandmother, defendant an aunt by marriage. Regardless of that fact best interests of the child is the criterion. On that subject Halstead v. Halstead, 259 Iowa 526, 144 N.W.2d 861, 865, contains this quote from 27 Am.Jur., Infants, section 108, page 829: "Wherever a controversy arises between different claimants to the custody of a child, the probable welfare of the child is the controlling consideration to which all questions of superior legal right are entirely subordinated. This test is applied in contests not only between the father and mother of the child, but also between either or both of the parents and strangers,

or where neither parent of the child is a contestant."

■ And, as this court stated in the case of In re Interest of Morrison Children, 259 Iowa 301, 144 N.W.2d 97, 100: " * * * the rule is well established in custody matters that a determination is necessarily based on what is likely to occur in the future because of present conditions and because of what has occurred in the past."

■ Although a nonresident of this state, that alone does not necessarily weigh against petitioner. See 27 Am.Jur., Infants, section 109, page 831, and Annos. 15 A.L.R. 2d 432.

■ However, it was her burden to prove Robert's welfare will be best served by taking the boy from defendant and placing him with petitioner. Thein v. Squires, 250 Iowa 1149, 1156, 97 N.W.2d 156.

Touching on the same subject we said in Halstead v. Halstead, supra, loc.cit., 144 N.W.2d 864: " * * * if the person having lawful care of a child at the time its custody is sought to be changed has properly provided and supervised its social, moral and educational needs for a substantial period of time, and the child has become attached to the environment and the people who have made possible the happiness, security and comfort of its early years, a court is not justified in transferring that custody to another except for the most cogent reasons. See Kouris v. Lunn, 257 Iowa 1267, 136 N.W.2d 502, 506; Thein v. Squires, 250 Iowa 1149, 1158, 97 N.W.2d 156; Durst v. Roach, 245 Iowa 342, 346, 62 N.W.2d 159; Wiggins v. Wiggins, 239 Iowa 1279, 1297, 34 N.W.2d 607; and Jensen v. Sorenson, 211 Iowa 354, 364, 233 N.W. 717."

V. There is no need to engage in an extensive reconsideration of the factual situation presented.

It discloses the grandmother has had custody of Robert several times in the past.

On each occasion his stay with her was of short duration. He was each time placed with people best described as strangers to him, until he began living with defendant. This transitory treatment can hardly be classified as conducive to the child's best interests. Even now her plans for him are speculative and uncertain.

Although Robert has not been with defendant for what may be considered an extended period of time, it is evident he is there well adjusted, healthy, loved, neatly kept, fed and well treated, in a normal, decent and wholesome atmosphere. There exists an established attachment between child and defendant, he looking upon her as his mother and she caring for him as one of her own.

With reference to the foregoing this court held in Jensen v. Sorenson, 211 Iowa 354, 364, 233 N.W. 717, custodial rights in a child should be determined as soon as possible. He must be given a place to grow and not be too readily transplanted. He should not be tossed like a ball from base to base.

In the same vein we said in Garvin v. Garvin, Iowa, 152 N.W.2d 206, 212: "It is also well established in this jurisdiction a child should not be compelled to exchange for known love, companionship and security in a suitable and proper home the uncertainties of a speculative, conjectural and sometimes frightening future."

And in Halstead v. Halstead, 259 Iowa 526, 144 N.W.2d 861, 866, is this pertinent statement: "Children too have rights which should be jealously guarded by the courts." See also Helton v. Crawley, 241 Iowa 296, 309–325, 41 N.W.2d 60.

With all due respect we are unable to agree with trial court's conclusion that the arrangements for care of Robert in the Taylor home has deteriorated because of a pending divorce.

Regrettable as divorces always are, nothing immoral, degrading or detrimental re-

garding defendant appears in connection with her action against Gene.

Better by far the child remain in a suitable home, such as provided by defendant, than be again subjected to the hazards of additional and possibly more severe physical and mental disturbances than previously experienced by him at a younger age when no substantial attachments had been established.

Although Donna admittedly possesses little in the way of worldly goods, it is evident she more than makes up for it by a wealth of loving care, affection, understanding, companionship and wholesome guidance in the only real home Robert has known since his mother's unfortunate death.

■ VI. We find no cogent reason which at this time compels or even warrants removal of Robert from defendant's custody.

Reversed and remanded for decree in accord with this opinion.

All Justices concur.