**In the Matter of the GUARDIANSHIP OF Herbert GAU, a Minor.**

**No. 53069.**

Supreme Court of Iowa.

Oct. 15, 1968.

Wilson, Hyland & Brick, by James P. Piazza, Des Moines, for appellants.

Wilson & Goodhue, Indianola, for appellees.

STUART, Justice.

This is basically a child custody matter which reaches us as an appeal from the trial court's ruling on an application in the Guardianship of Herbert Gau for the removal of the guardian of the person and property of said ward and the appointment of a new guardian of his person and conservator of his property under sections 633.63 and 633.65, Code of Iowa. The trial court removed the guardian, requested an application for the appointment of a new guardian of the person and conservator of the ward's property and in effect awarded

custody of the minor to the party suggested by applicant.

■ The first problem before us is the scope of our review. Neither party aids us on this question. We have said many times the trial court has considerable discretion in the removal of a fiduciary. In re Guardianship of Husmann, 245 Iowa 830, 837, 64 N.W.2d 252, 256; In re Guardianship of Cannon, 231 Iowa 366, 370–371, 1 N.W.2d 217, 219–220.

The trial court stated: "The court feels in this case that it has not abused its discretion and is acting in the best interest of this 16-year-old boy." However, as the trial court also pointed out, no statutory grounds for removal were pleaded. It is not claimed any were proven. A complete review of the record, the tenor of the briefs and arguments, and the trial court's opinion show clearly the real issue presented is the custody of Herbie Gau and the petition for removal is merely the vehicle used to accomplish the change in custody. The cited cases do not apply to the issue of child custody.

■ The parties as well as the trial court speak of "the best interest" of the ward. The application asked for general equitable relief. It would be most unfortunate if a matter reaching us without objection in this manner would be subject to a different type of review than a question of custody raised in a habeas corpus or divorce action. For these reasons we treat the matter before us in the same manner as a custody suit under habeas corpus. Therefore, our review is de novo and, as in all custody cases, our first and governing consideration must be the best interest of the child. Vanden Heuvel v. Vanden Heuvel, 254 Iowa 1391, 1399, 121 N.W.2d 216, 220; Ball v. Ball, 250 Iowa 763, 765, 96 N.W.2d 317, 319; Jensen v. Sorenson, 211 Iowa 354, 367, 233 N.W. 717, 723. Rules of Civil Procedure 344(f) (15). We give weight to the trial court's findings but are not bound by them. R.C. P. 344(f) (7).

Matt Gau, a widower, was killed in an automobile accident August 9, 1960. Seven children survived. Evelyn, Gilbert and Eleanor were married and had homes of their own. At the suggestion of Evelyn and Gilbert in a family conference, it was agreed Eileen, who had just turned 19 in July, should act as guardian of the person and property of Genevieve, 17, Darlene 13, and Herbert, 9. . She willingly accepted the responsibility to keep the family together and to raise them like her parents had raised her.

At the time of Mr. Gau's death the family home was in South Dakota. After seven to nine months, they moved to Indianola, Iowa to be near their oldest sister Evelyn. Berkley Wilson, husband of Evelyn's mother-in-law furnished them an apartment rent free. Eileen was appointed guardian of the person and property of the three younger children in Warren County, Iowa.

They did not like Indianola and they moved to Des Moines in June or July, 1962. The guardian was authorized to use funds of her wards as a down payment on a home. She made the payments out of her earnings to pay for her share of the home.

Genevieve and Darlene are now married and live in their own homes in Des Moines. In February 1964 Eileen married Jim Magneson. They were introduced by a mutual friend while he was on parole from a conviction of larceny of a motor vehicle. About a year after their marriage, his parole was revoked because he moved and changed jobs without notifying his parole officer.

While Mr. Magneson was in prison, his child, Pam, was born. Eileen had a difficult time financially. She received little help from members of her family during this trying period. Between October 1966 and June 1967, when Mr. Magneson was released and returned to the home, she worked three jobs from 8 a. m. to 2 a. m. She worked a regular job at the city health

department which she retained at the time of hearing. She also worked as a waitress. During this period Herbie was required to stay with Pam a great deal of the time when he was not in school.

Since his release from prison Mr. Magneson has held three different jobs. There is no record of periods of unemployment. At the time of the hearing he was working at a service station from 7:00 in the morning until 11:00 at night to catch up on debts accumulated while he was in prison. The week before the hearing his paycheck was $127. Eileen retained her regular job. Her take home pay was $95.40 every two weeks. Mr. Magneson has assumed his role as head of the family and is now making most of the major decisions. Herbie likes to work on automobiles and was working part time at the same filling station which employed Mr. Magneson.

The applicant asks that Herbie's aunt, Mrs. Monteferring, be made his guardian and conservator. She and her husband farm near Auburn. Herbie has spent part of his summer vacations on their farm. They raised an adopted son, now a chiropractor, and have a 15 year old adopted daughter. They are quite willing to take Herbert into their home. There is no adverse evidence concerning them, their way of life or their home.

At the time of hearing, Herbie was 16 years old. He had lived with Eileen since he was 9. He was a junior in Dowling High School, a parochial school in Des Moines. He did not particularly care for school and failed his junior year of English. He made it up in the summer and is now a senior. His aptitude tests have always been below average. Neither side presented the testimony of his teachers or counselors at school. However, there is no evidence of any disciplinary problems at school or trouble with the police. All agree he lacks the maturity of a 16 year old. His testimony, taken with the court room cleared of all but the attorneys, consisted mostly of yes or no answers on both direct and cross-examination. He testified he enjoyed the weeks during summer vacations spent on the Monteferring farm. He also enjoyed working on automobiles at the station where Magneson worked at the time of trial and stated this is what he wanted to do after he finished high school. He testified he wanted to stay with Eileen. The trial court noted some hesitancy in answering this question. He likes hunting and fishing and apparently has done both.

There is little need to detail the charges against Eileen. It is claimed she is an untidy housekeeper. Much of the testimony relates to the period when she was working from 8:00 a. m. to 2:00 a. m. Failure to perform her household duties under such circumstances is understandable.

It is stated in general terms that she was not kind to Herbie and struck him when he didn't obey. There is no evidence of injury or excessive use of force. Herbie made no complaint in his testimony of his treatment by Eileen.

It is claimed she used "vulgar" or "atrocious" language toward the children. We are given no examples from which to make our own evaluation.

There are no complaints about Eileen's activities as guardian of Herbert's property. None of his inheritance has been used for his support. She intends to deliver it to him when he reaches his majority. She has received and used his social security payments which were $59.40 per month at the time of trial.

We do not consider the complaints against Eileen significant. They appear to have been overlooked by the relatives until dredged up in the heat of family dispute. Other than untidiness of the home, no complaints are of recent origin.

The trial court did not criticize Eileen, saying: "The Court wishes to state at this point that he has much respect for the present Guardian, Eileen. There is no question in the Court's mind but what she

has done the best job she was capable of, and that she has considerable trouble and stress in finishing the raising of the three minor children. She took charge of the three minor children six years ago at a time when she was only 19 years of age herself and has certainly done the best she could; however, fate has not been kind to her. The Court has nothing but respect for the Guardian, Eileen Magneson."

One gets the impression that Eileen's marriage to a felon and his return to the home are the main reason for the application and the court's decision. Jim Magneson was released and returned to the home in June 1967. The petition was filed in September 1967. About this time there was conversation among the relatives and friends that something would have to be done about Herbie's living conditions.

The trial court said: "The Court also has respect for Mr. Magneson's apparent efforts to rehabilitate himself. The Court can understand the difficulties which a person under a felony conviction is confronted with. We cannot foresee what success he will have in rehabilitating and readjusting himself, but we can be sure that the past record will stand and there is nothing he can do to alter it. The problem facing the Court is where this 16-year-old boy who is not getting along too well will be the best off and what is to his best interests. The Court under this evidence cannot categorically state that the present Guardian is personally unsuitable, but the record impels the Court to feel that the home is unsuitable and the Guardian at this time is disabled by reason of the total environment to effectively discharge her duties as a fiduciary."

While such interest and concern are understandable, there is no indication in the record that Mr. Magneson's presence and influence have had an unhealthy or improper effect on Herbie. He is attempting to rehabilitate himself. His testimony appears reasonable and sincere. He wants Herbie to live with them but recognizes Herbie's happiness is most important. He realizes he cannot take the place of a father as there is only 10 years difference in their ages, but he is interested in Herbie and his welfare.

 Under this record we are unable to agree with the trial court that the ward's best interest will be served at this time by changing his custody and guardian. He is 16 years old and has stated his preference. He is now a senior at Dowling. He should be permitted to finish school with his class. In less than a year he will graduate. If at that time he wishes to go work on his uncle's farm, he may do so. If he wishes to study automobile mechanics in Des Moines, he may do so. In our opinion a move at this stage would be more disrupting than leaving him in the present home. Eileen should also remain his guardian and conservator of his property.

For the reasons stated the trial court is reversed and the matter is remanded to the district court for judgment in accordance herewith.

Reversed and remanded.

All Justices concur.